E-FILED
Friday, 30 July, 2010   03:11:23 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT COURT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JOHN PAUL JENKINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 08-CV-2225 |
| ERIC KEN SHINSEKI SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION

This case is before the court for a ruling on the Motion for Summary Judgment (#40) filed by Defendant, Eric K. Shinseki, Secretary of the Department of Veterans Affairs. The court has closely reviewed the arguments and supporting documentation filed by both parties. Following this careful and thorough review, Defendant's Motion for Summary Judgment (# 40) is GRANTED.

## FACTS[1]

Since 1987, Plaintiff, John Paul Jenkins, has been employed in the housekeeping division at the Illiana Heath Care System, formerly known as the Danville Veterans Administration Hospital (VA Hospital). In April 2007, the VA Hospital established a third shift housekeeping position and eliminated the identical second shift housekeeping position. The new position was created because supervisors in the Supply, Processing and Distribution (SPD) section of the VA Hospital, the department responsible for the sterilization and maintenance of surgical instruments

---

[1] The facts are taken from the Statement of Undisputed Facts set out by Defendant and the related supporting documentation filed with this court.

as well as the distribution of medical supplies within the hospital, informed management that housekeeping would need to start cleaning surgical units during the third shift rather than the second shift. The newly instituted position paid only 40 cents more per hour and was not considered a promotion as no change in grade, step or other position of employment occurred. On April 17, 2007, an announcement was issued within the housekeeping section regarding the new post. The announcement also indicated the position would replace the corresponding second shift surgical housekeeping position.

  Two employees applied for said position: Plaintiff and the VA Hospital employee whose second shift position was being eliminated due to the change. The record indicates the second applicant possessed the additional skills and training required for the new position as the job entailed the same duties and responsibilities as the employee's previous position. Plaintiff, in contrast, did not have such additional skills as his general housekeeping position did not require them. At the time of application, Plaintiff stated that if he did not receive the third shift position he wished to transfer from first shift to second shift. However, as the job posting indicated, the new third shift position eliminated the corresponding second shift position. Therefore, it was impossible for the VA to satisfy Plaintiff's secondary request at the time.

  Having been with the VA Hospital since 1975, Marion Fellers (Fellers) has known Plaintiff since his hiring in 1987. Of the management positions held by Fellers, the most recent include general supervisor of housekeeping from 1997 – 2006 and Chief of the Environmental Sanitation Section from October 2006 until his retirement in June 2009. In April 2007, two supervisors in the VA Hospital's SPD section advised Fellers and one of his housekeeping foremen, Mr. Jesse LeSure (LeSure), of the new surgical housekeeping position. Fellers

recommended to his supervisor, Chief of Facilities Management Andrew Green (Green), that the second shift housekeeper receive the new position. Fellers' recommendation was based on a variety of factors including: 1) the position entailed the same duty assignment the second shift housekeeper was currently and successfully performing; 2) the second shift housekeeper's position was being eliminated and the employee in that position would need to be assigned to another position if possible; 3) said applicant wished to transfer to third shift for personal reasons; and 4) Fellers was less satisfied with Plaintiff's efficiency, effectiveness and productivity as compared to the other applicant.

Taking the aforementioned factors into account, Green accepted Fellers' recommendation and appointed the second shift housekeeper to the new position on May 14, 2007. According to Green's declaration, he concurred with Fellers''s suggestion based on the following: 1) information provided by Plaintiff's supervisors working under Green's direction over a period of several years; 2) as Plaintiff's ultimate supervisor, Green was acquainted with Plaintiff's marginal housekeeping work habits; 3) Green was more satisfied with the second shift housekeeper's skills and quality of work; and 4) Plaintiff's ultimate lack of efficiency, effectiveness and productivity as compared to the other applicant.

The record also indicates Green hired the second shift housekeeper in an effort to promote the efficiency of the VA Hospital's housekeeping service and foster an amiable and productive work environment. Had Plaintiff been appointed to the new position, he would have been supervised by the same VA Hospital employee he accused of sexual harassment and a

3

hostile work environment in April 2006.[2]  As this individual was the only third shift housekeeping supervisor at the time of Plaintiff's application, a different supervisor was not an option.[3]  Thus, in an effort to: 1) maintain an efficient and amiable work environment; and 2) prevent another situation in which Plaintiff believed he was subjected to sexual harassment and a hostile work environment, the second shift applicant was accepted to the third shift surgical housekeeping position.

Finally, said supervisor informed Green via email that due to Plaintiff's lack of dependability as evidenced by his continual tardiness and occasional departure from his assigned post during work hours, he was "not comfortable with John Jenkins coming to PM Shift."  These sentiments were based on: 1) Plaintiff's annual leave usage which indicated he frequently arrived ¼ to 1 ½ hours late to work; and 2) between September and November 2005, Plaintiff was observed talking to a woman in the parking lot away from his station during work hours.  The supervisor also stated he was "fearful any type of corrective action on my part [Plaintiff] would consider retaliation for his EEO complaint."  Thus, Green ultimately determined it would be an unwise management decision to place Plaintiff under the same supervisor.

Though Plaintiff's secondary request to transfer to second shift was not immediately fulfilled, the record indicates he was the next housekeeper to receive a transfer to second shift. The transfer took effect in November 2007 with Plaintiff falling under the supervision of LeSure.

---

[2] Jenkins brought sexual harassment and hostile work environment claims against the supervisor in question in his first district court case filed with this Court in *Jenkins v. Sec'y of the Dep't of Veterans Affairs*, Case No. 07-CV-2235, 641 F. Supp. 2d 754 (C.D. Ill. 2009).  The case resulted in summary judgment for the Secretary of the Department of Veterans Affairs.

[3] Fellers' declaration indicates this supervisor was the only housekeeping supervisor for the third shift at the VA Hospital from at least January 2007 until roughly November 2007.

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(b), a defending party "may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As the Supreme Court noted in Celotex Corp. v. Catrett, one of the primary purposes of the summary judgment rule is to "isolate and dispose of factually unsupported claims or defenses." 477 U.S. 317, 323-24 (1986).

When evaluating a motion for summary judgment, a district court has a singular task: "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The moving party has the burden of supplying proper documentary evidence to demonstrate the absence of a genuine issue of material fact. Schmidt v. Runyon, 20 F. Supp. 2d 1246, 1248 (C.D. Ill. 1998). In determining if a genuine issue of material fact exists, a court is to believe the evidence of the nonmovant and "all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

However, the nonmovant cannot rest on mere allegations or denials to defeat summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Thus, in order to survive summary judgment, the nonmovant is required to make a sufficient showing for each essential

element of its case on which it bears the burden at trial. Celotex, 477 U.S. at 322-23. If the court determines no issue of materiality exists, i.e. the record reveals that no reasonable jury could find for the nonmoving party, summary judgment is appropriate. Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 335 (7th Cir. 1991).

## II. MERITS OF PLAINTIFF'S CLAIM

The sole issue before the court is whether Plaintiff was not selected for a housekeeping position at the VA Hospital in May 2007 as reprisal for an Equal Employment Opportunity (EEO) claim he filed against the VA Hospital in April 2006. Even though Plaintiff's Complaint (#6) includes other allegations such as handicap and veteran's discrimination, the Defendant correctly notes the Title VII retaliation claim is the only matter properly before this court as it is the sole issue Plaintiff administratively exhausted.

### A. RETALIATION CLAIM

The anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

As the text indicates, the statute not only protects employees who personally oppose an unlawful employment practice, but also those who participate in a proceeding or investigation related to a discrimination claim. See Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. 53, 59 (2006). A plaintiff may establish a violation of the anti-retaliation provision by employing either the direct method or the indirect, burden-shifting method. Tomanovich v. City of Indianapolis, 457 F.3d 656, 662 (7th Cir. 2006).

1. THE DIRECT METHOD

If proving retaliation directly, an employee must show: 1) he engaged in a statutorily protected activity; 2) he was subject to an adverse action by her employer; and 3) a causal link exists between the two events. Scaife v. Cook County, 446 F.3d 735, 741 (7th Cir. 2006); see also Matthews v. Wis. Energy Corp., 534 F.3d 547, 558 (7th Cir. 2008), citing Metzger v. Ill. State Police, 519 F.3d 677, 681 (7th Cir. 2008).

Within the direct method, a plaintiff may rely on either direct or circumstantial evidence to substantiate his claim. Direct evidence is generally statements or near-admissions by the employer while circumstantial evidence is that which "suggests discrimination through a longer chain of inferences." Atanus v. Perry, 520 F.3d 662, 671 (7th Cir. 2008), quoting Luks v. Baxter Healthcare Corp., 467 F.3d 1049, 1053 (7th Cir. 2006). According to the Seventh Circuit, circumstantial evidence demonstrating intentional discrimination includes: "1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; 2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and 3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491 (7th Cir. 2007), quoting Sun v. Bd. of Trs. of Univ. of Ill., 473 F.3d 799, 812 (7th Cir. 2007). Thus, the focus of the direct method is "not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." Atanus, 520 F.3d at 671, citing Burks v. Wis. Dep't of Transp., 464 F.3d 744, 751 n.3 (7th Cir.

2006).

In turning to the case at hand, the record indicates that Plaintiff fails to support his retaliation claim via the direct method. As the facts demonstrate, Plaintiff possesses no direct evidence of Defendant's retaliation. Therefore, this Court must determine if he may instead satisfy the direct method via circumstantial evidence; the record ultimately reveals he cannot.

The first listed method for demonstrating retaliation directly via circumstantial evidence is "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." Hemsworth, 476 F.3d at 491. In order to qualify as "suspicious timing," a sufficient temporal proximity must exist to support Plaintiff's claim. However, the Seventh Circuit has also acknowledged that "mere temporal proximity is not enough to establish a genuine issue of material fact." Tomanovich, 457 F.3d at 665, quoting Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004). Furthermore, the Seventh Circuit has ruled that gaps of three or four months do not constitute "suspicious timing." See Tomanovich, 457 F.3d at 665 (holding a four month gap between Plaintiff filing an EEO complaint and his subsequent firing did not qualify as suspicious timing). See also Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 919 (7th Cir. 2000) (holding a three-month gap could not reasonably support a causal connection for a retaliation claim). The facts of Plaintiff's case indicate the temporal proximity is even more removed and tenuous than the aforementioned cases as Plaintiff filed his EEOC claim in April 2006 and was declined appointment to the third shift position over a year later in May 2007. Therefore, Plaintiff cannot demonstrate suspicious timing and thereby establish the necessary causal connection between his protected activity

(filing an EEO complaint) and Defendant's subsequent failure to appoint him as the new third shift housekeeper or honor his secondary request to transfer to second shift.

Besides suspicious timing, a showing of ambiguous oral or written statements as well as behavior directed at other employees in the protected group may also suffice to establish the first circumstantial evidence prong. Here too, however, Plaintiff falls short. Plaintiff has neither presented evidence nor even suggested such statements or behavior took place.

Plaintiff also fails to meet the second circumstantial evidence prong, i.e. "evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment." Hemsworth, 476 F.3d at 491. The Seventh Circuit has noted that determining if two employees are "similarly situated" is a "common sense inquiry that depends on the employment context." Filar v. Bd. of Educ. of Chicago, 526 F.3d 1054, 1061 (7th Cir. 2008). The comparator must be similar enough to "eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, [so as to] isolate the critical independent variable: complaints about discrimination." Filar, 526 F.3d at 1061, quoting Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007). In essence, a plaintiff must show the individual in question is directly comparable to him or her in all material respects. Burks, 464 F.3d at 751, quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). According to the Seventh Circuit, relevant factors to consider in making this determination include, "whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." Burks, 464 F.3d at 751.

Given the facts of this case, the only person this Court could examine as a "similarly situated" party is the surgical housekeeper appointed to the third shift position instead of Plaintiff. However, the record indicates this individual cannot be deemed a similarly situated employee as the housekeeper fails to meet the Seventh Circuit's definition. For example, the two parties are hardly comparable in all material respects as they differ in both qualifications and experience. Though Plaintiff has worked at the VA Hospital since 1987, he possessed only general housekeeping skills at the time of his application for the third shift position. In contrast, the second shift housekeeper was already responsible for cleaning surgical units at the time of application, a duty and responsibility wholly separate from Plaintiff's and one requiring specific training and additional skills. Furthermore, the two individuals did not report to the same supervisor, a factor to consider in addition to the experience and qualifications of the parties.

Finally, Plaintiff fails to meet the third prong, namely provide evidence that the "employer's reason for the action in question is a mere pretext for discrimination." Hemsworth, 476 F.3d at 491. Defendant has offered a host of legitimate and nondiscriminatory reasons for its decision. As discussed in the statement of facts, the declarations of Green, Fellers and the former supervisor against whom Plaintiff brought a sexual harassment suit in 2007, indicate that: 1) the second shift housekeeper was successfully and satisfactorily performing the same duties necessary for the new position; 2) the second shift housekeeper possessed a number of additional skills specifically suited to cleaning surgical equipment which Plaintiff lacked; 3) the new position would eliminate the second shift housekeeper's old position; and 4) both the nominating and selecting officials were less satisfied with Plaintiff's skills and work ethic as compared to the other applicant.

In addition to these wholly legitimate and non-discriminatory reasons, Plaintiff was also not appointed to the new post as doing so would place him under the same VA Hospital supervisor Plaintiff accused of sexual harassment and a hostile work environment in 2007. As this supervisor was the only individual overseeing the third shift at the time the new position was announced, officials at the VA Hospital determined it would be imprudent to place Plaintiff under this supervisor. In fact, a regulation regarding sexual harassment in the workplace explicitly states that, "[P]revention is the best tool for the elimination of sexual harassment. An employer should take all steps necessary to prevent sexual harassment from occurring . . . ." 29 C.F.R. § 1604.11(f). As Plaintiff had already complained that his former supervisor's actions constituted sexual harassment and created a hostile work environment, Defendant took appropriate steps in choosing not to place Plaintiff under said supervisor.

Finally, the former supervisor reasonably feared that if he was to supervise Plaintiff in the new third shift position, any corrective action he sought to take against Plaintiff would be perceived as retaliation. In essence, the supervisor would be unable to effectively and efficiently perform the duties required of him. In all, Defendant has provided ample proof that he possessed legitimate and non-discriminatory reasons for failing to appoint Plaintiff to the third shift position as he requested in April 2007. This court additionally notes that it is "mindful that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." Brummett v. Sinclair Broad. Group, Inc., 414 F.3d 686, 693 (7th Cir. 2005). Therefore, Plaintiff's attempt to prove retaliation via the direct method categorically fails.

### 2. THE INDIRECT METHOD

If the direct method is unfeasible, as is often the case, a plaintiff may prove retaliation under Title VII by the indirect, burden-shifting method. Tomanovich, 457 F.3d at 663. Under this method, an employee is required to show: "(1) []he engaged in a statutorily protected activity; (2) []he met the employer's legitimate expectations; (3) []he suffered an adverse employment action; and (4) []he was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity." Tomanovich, 457 F.3d at 666, quoting Moser v. Ind. Dep't of Corrections, 406 F.3d 895, 903 (7th Cir. 2000). If a prima facie showing of retaliation is established indirectly, the burden of production "shifts to the defendant to articulate a legitimate rational for its 'adverse employment action,' after which the plaintiff must prove that this reason is pretextual." Matthews, 534 F.3d at 558; see also Scaife, 446 F.3d at 739-40. If the employee is unable to establish mere pretext once the defendant employer proffers a legitimate reason for its action, the retaliation claim cannot survive summary judgment and dismissal is warranted. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002). Besides failing to prove his retaliation claim via the direct method, Plaintiff also falls short under the indirect method as he fails to establish each of the aforementioned requisite elements.

As with the direct method, Plaintiff cannot demonstrate he was treated less favorably than a "similarly situated" employee who did not engage in a statutorily protected activity. As previously stated, Plaintiff and the second shift housekeeper had different supervisors in addition to different qualifications and employment experiences. In all, they were not similarly situated as defined by the Seventh Circuit. The Defendant astutely notes that for this reason alone, Plaintiff fails to indirectly establish a prima facie case of retaliation. While Plaintiff may satisfy the first and second prongs of the indirect method, i.e. engagement in a statutorily protected

12

activity and job performance which meets the employer's legitimate expectations, he simply cannot do the same with the fourth prong. Thus, Plaintiff fails to indirectly establish a prima facie retaliation claim under Title VII.

In addition, as previously discussed, the record indicates Defendant has proffered a host of legitimate and nondiscriminatory reasons for appointing the other applicant to the housekeeping position in question. Plaintiff has not shown that the reasons given were pretextual. Thus, no genuine issue of material fact exists and summary judgment is appropriate with respect to this claim.

## B. HANDICAP AND VETERAN'S DISCRIMINATION CLAIM

This court agrees with Defendant that Plaintiff has failed to exhaust his administrative remedies with respect to the alleged handicap and veteran's discrimination claims also included in the suit. Therefore, such claims are barred from consideration by this Court.

Exhaustion of administrative remedies is required when the plaintiff claiming discrimination or retaliation is a federal employee. See Doe v. Oberweis Dairy, 456 F.3d 704, 712 (7th Cir. 2006), citing Hill v. Potter, 352 F.3d 1142, 1145-46 (7th Cir. 2003). Federal employees must file their discrimination claims directly with the agency that employs them, rather than with the EEOC. Doe, 456 F.3d at 712.

In this case, Plaintiff did not include his claims of handicap discrimination and veteran's discrimination in his formal EEO complaint. As such claims were not administratively exhausted, they are not properly before this court and do not warrant consideration. Furthermore, this court notes that it already determined that Plaintiff was not disabled within the meaning of

the Rehabilitation Act, which applies to federal employees. See Jenkins v. Shinseki, 641 F. Supp. 2d 754, 764-65 (C.D. Ill. 2009).

### C.  CONCLUSION

Plaintiff has ultimately fallen short in providing this court with any definite, competent evidence in response to Defendant's well-supported Motion for Summary Judgment.  As discussed, Plaintiff has failed to establish any issue of material fact.  Even when viewed in the most favorable light, there is nothing in the record to suggest a reasonable jury could return a verdict on Plaintiff's behalf.  As such, Defendant's Motion for Summary Judgment must be granted.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#40) is GRANTED.  Judgment is entered in favor of Defendant and against Plaintiff.

(2) Defendant's Motion to filed Redacted Motion (#39) is GRANTED.

(3) Defendant's Motion to Strike Plaintiff's Reply (#52) and Motion for Court to Disregard (#54) are DENIED as moot.

(4) This case is terminated.

ENTERED this 30th  day of July, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE